Our next case is Konami Gaming, Inc. v. High 5 Games, 2022-1370. Mr. Ryan, we're ready when you are. Thank you, Your Honor. May it please the Court, I'm Robert C. Ryan of Holland & Hart for the appellant, High 5 Games. As Your Honors may recall, at least two of you that were on the prior panel, you have visited this case before. And I'm pleased to say you affirmed the grant of summary judgment to our client that the claims in these four patents in issue, 52 patent claims asserted, were all invalid as being functional under 112 paragraph 6, which is what governed these claims at the time, pre-AAA. And that the claims recited a variety of functions of a general purpose computer in a gaming context, providing a game. This appeal is about fees, right? Correct, Your Honor. Yes, it is. So we had the summary judgment, then we went back down, unaffirmed on Rule 36. We went back down before the district court to request fees. Because of our belief that the case that was brought against our client was baseless for multiple different reasons. I can't get through them all in the short time allotted, of course. Well, obviously I was not here last time. Yes, Your Honor. Tell me if I'm remembering the following. The district court in granting summary judgment did so on 112F, or it used to be called 1126 grounds, and also on 101 grounds. And there was a certain challenge to deciding it on 1126 grounds because the claim's not written as a means plus function claim, but you persuaded the district court that it should be treated as such, and then there was not enough in the spec to meet 1126 requirements. And on 101, I guess one fact, I think I'm remembering this right, but correct me if I'm wrong, that sticks in my mind, was that on appeal, IGT filed an amicus brief to say, Dear Court, please beware of the 101 ground. A lot of gaming kinds of things should be eligible under 101, and it would be better if you just stayed away from that. Why aren't those characterizations, if accurate, enough to make it at least not an abuse of discretion, the district court's determination now on the fees motion, that this was not an exceptionally weak case?  Everything you said is accurate. Under 112, okay, the key issue in the case was the law announced in the early 2000 and before time frames, repeated in Williamson en banc, but not new in that case, that a claim would be functional under 112 if it recited function without, in the claim, sufficient structure to perform the function. That law was black letter at the time of this litigation, when it commenced in 2014. And then it was re-articulated in Williamson en banc, as I say, which quotes a 2000 Watts decision from this court. As the source of that law, that it was the quoting in the Williamson opinion. The point being that if their expert had been instructed that that was the law, we wouldn't be here, because their expert admitted. First of all, he testified that he had not been instructed that that was the law, and that his view was that the claims weren't functional because they didn't define any structure, not sufficient structure to perform the function. Had he been instructed, he would have come to the conclusion, he had to, because he admitted, and the district court so found in its summary judgment, that the claims did not recite sufficient structure to perform the function. And not only did they not recite sufficient structure, i.e., the algorithm required for the claim processor to perform the voluminous functions in the claim, there were many of them, game outcomes on display. But the district court said, Konami's litigating position, while ultimately flawed, was not so objectively baseless as to make the case exceptional. Yes, your honor, that's what he said, and that was the error. If you look at it- That's within his discretion. Not if he's making a legal error, correct? If that's based on a legal error, then it's an abuse of discretion necessarily. The legal error in that discussion, he's citing aristocrat. And so, because aristocrat had a claim that was an express, means plus function claim, had means for language in the claim. Because aristocrat said means for, and your claim in these cases, in this case, did not recite means for, they had a reasonable basis to dispute the applicability of aristocrat. First of all, that had nothing to do with the decision in this case on summary judgment, that point was not even articulated in the opinion. The point of aristocrat was not that means for was recited in the claim. And by the way, the expert in this case agreed, okay? And Konami admitted multiple times in this case that its claims recited functions. So the question was not whether means for was recited in the claim. The question was, what was in the claim sufficient to perform the function? That was recited. The problem with these cases is that you're figuring they will have a claim or the spec will, the claim hasn't been written in means plus function language. And there's some functional material in there somewhere, and then the question is, is there enough functional stuff in there to say, well, this is now going to be treated that way. Yes. That's a very fine line. Well, I don't think their expert ever testified that there was no functional information at all. The question was whether there was functional information of a sufficient nature to carry on, right? Konami denied that there was any function at all in its claims. While at the same time, in other places, admitting that they were functional. That there were functions in the claims. And its expert making those admissions. Konami's arguments were all over the place. Pardon me? Function for what purpose? To perform the game. To provide the outcome at the interface. Their side was to say, well, but that's what the function you're pointing to is not necessary for the game. Well, the function was necessary for the game. The claims recited functions. No, but that's, they have a different point of view about what was being disclosed. All I'm saying is the question in a means plus function claim, especially where it hasn't been written in that way, there's a question. Right, and that question is. What's the purpose of the function in all of this? Well, the question is, and it was under Williamson, and was prior to Williamson, established before 2000 by this court. Was the function recited in the claim, supported by structure either in the claim or in the specification, sufficient to perform the function? It was then. Well, I've been around before Williamson. I've been around for a long time. And that's the problem in this case. Problem, and oh my gosh, what's the answer to the question, has been plaguing me ever since I've greeted this. When they said, gee whiz, it doesn't say mean plus function, but it might be. Yes. And then there's always a debate. Except. And what I understood the district court to say here was, there was a debate. And you won the debate, but the debate wasn't frivolous. The debate was frivolous because of what their expert admitted. Their expert admitted that there was not sufficient structure to perform the claim function, either in the claim or in the spec. This case should never have been brought. It was a waste of time. It cost our client many millions of dollars. We told them early on, you're going to lose this case. Your claim tree site functions without sufficient structure to perform, either in the claim or in the specification. Their expert admitted at his deposition that that was the case. This case should have been over at least by that time. When their expert admitted at his deposition. Did you have to win the argument on the 101 point as well to prevail? No. The question is whether the case is exceptional. And that means, were any of the legal arguments baseless? The non-trivial, important arguments in the case, baseless? Can a case be partially exceptional and partially non-exceptional? That has not been argued in the case, your honor. That has not been argued in this case. Is that going to be present for us in this case? I don't think so, because it's not argued by the parties. The parties pitched this to the court under the party presentation rule as an all or nothing proposition. The case is either exceptional or not. There's not an argument that fees should be apportioned, is what I believe your honor is saying. What's the court supposed to do if it's so that there are two grounds that were presented in a case, on one ground it's an exceptional case, on the other it's not? Because I think the case is either exceptional or it's not, and fees should be awarded based on whether it's exceptional or it's not. And that issue is not before the court as to whether to divide the baby, or fees, based on differing arguments that were presented in the case. Okay, can I just ask you for a joint appendix cite, if you happen to have it to the, you referred repeatedly to the testimony of the other side's expert, conceding if that's the right word, that there is no meaningful structure in the claim. You can get it to me on. May I bring it up on reply? Please. Thank you, your honor. I appreciate the question very much. We will reserve the rest of your time. Mr. Hullaburger. Good morning, your honors. May it please the court. Chris Hullaburger of Howard and Howard Attorneys on behalf of Konami Gaming. As Mr. Ryan was just speaking of both the abstractness and the means plus function. In this case, neither of those are warranting an exceptional case finding. Would you agree that if one of them was frivolous, truly so weak, they needed to only win, one of them to win the whole case? I think in the totality of the circumstances, it would be within the discretion of the court to look at both of them. And if one of them was so weak that it was exceptional, whether that court would find grounds to hold the whole case exceptional. I think it's a case by case situation. And I think in octane, the issue that the court has charged this court and district courts with is whether or not it stands out from all the other cases. And I think the most instructive case is the three versus biomedical, which is what we raised in our response, which wasn't addressed by high five and reply, where you had an IPR ruling that the claims were means plus function. There was not sufficient structural limitations. It went back to the district court. The plaintiff there, the patent holder, continued to assert means plus function. And they did so with further limitations. Now, it's a distinction that claim recited means. Konami's patents never recited means. And we'll talk about Mr. Akers in a moment. In that case, they continued. They alleged by the defendant that the patentee relied on expert testimony, similar to what HIFI was doing for Mr. Akers. And the court said you did not abuse your discretion. This court said the district court did not abuse its discretion in denying attorney's fees. And that's paralleling HIFI's arguments here. In contrast, the cases they rely on, in particular Rothschild, where you had a patent troll who had declarations from the patentee and the patent counsel saying they never evaluated the prior art. Can I just ask, does it really matter whether the Rothschild plaintiff was a troll or not? Either the arguments were frivolous or not, does it really matter whether the plaintiff was in a product-creating business, or was a university, or was a inventor financing outfit that paid for its financing by filing lawsuits? So in that particular case, the reason the court characterized it, they didn't actually characterize your honor as a patent troll. It was a- Right, that's right. I guess I was suggesting that you should have left the word out. Well, yes, correct. To be more precise, it was 58 different lawsuits on a wide-ranging technology from like alarm clocks to something on the very other end of it. I forget what it was. But they weren't meaningful, I suppose, patents on key technology. Konami spent years developing this game and promoting it. And it was featured in many of their customers. And so much, in fact, it started being copied by the likes of the HIFIs and the other lawsuits against Mark Studios, which I want to talk about briefly, because the reasonableness. It's not just Konami that's saying this is reasonable. You had the PTAB, who also did not consider the claims as mean plus function. HIFI didn't assert that they were mean plus function in that proceeding. Now, they drop a footnote, and they say, we're only doing that for this proceeding. But is Konami reasonable in finding the claims are not means plus function? So 101, obviously, I think it was an IPR, right? Correct. So 101 was not an issue before the board. And 112.6 would not have been before the board as a invalidity ground. So I'm not sure this matters, but in what sense did something before the board bear on reasonableness or non-extreme weakness or something of the position here? Sure. Judge Toronto, in the IPR context, HIFI's position today and in this exceptional case standard is, our grounds were so baseless that no one could have construed these claims without means plus function, and they're indefinite. Yet, in their IPR petition, they construed the claims. And they had a basing. They took a position in front of the IPR where they're saying it's not a means plus function claim. I'm sorry, Judge. They took a position in front of the patent office saying it's not a means plus function claim. That's correct. And you're saying, well, they ought to be held to that. How can they possibly tell us to change their mind? Surely it shows that we weren't unreasonable. That particular take on what happened in the PTO is not what the judge here relied on. Well, we stated it. No, you read the judge's opinion. He didn't say, well, the claim construction piece of the IPR is humming in my ear. He said the fact they didn't institute is humming in my ear. And he's wrong about that. Yes? I mean, he did say that. Yes, he did say that. Just being honest with me. He did say that, yes. I wish he would have said as you've articulated it, quite frankly. Well, it seems to me like you're sort of humming in the wrong direction. The other side got up here and said, your expert in the trial, in essence, has confessed that this claim fails as a matter of law. And what's your response to that? Right, so we cite in our brief. What did your expert say? Are they wrong? I think they are wrong. Don't you think you have an obligation to tell us in light of the fact that that's his best argument? Well, so what I would say this, right, his argument is, before you give me a page in the appendix to look at, because we're talking about what the expert said. It would help to look at it. Well, so all I can say is what we provided in our response, which is at. Nobody can tell us in the record where this testimony is. Well, page 9 and 10 of our red book brief. Yeah, that's not in the record, I don't believe. We're talking about the record in the case that was up here before when we ruled 36 the case. I think that's right. In the joint appendix, it would be quite remarkable if this central point, and maybe it's true, but it would be remarkable if this central point does not actually appear in the appendix. Judge Frantz, as I let them point that out to you, as opposed to me helping them, but what I would say is when you look at what we cite in our response brief, and this is at pages 9 and 10, where we put, and this is in the record. Well, you're both putting a twist on what was a record in the earlier case, right? And I don't blame you for putting a twist on it, right? So the question is, whose twist is right? So I would tell you, Judge Clevenger, it doesn't matter. And here's why. Under this analysis, was Konami reasonable? And as part of that, you have to look at, we were a claim without means plus function. In their brief. It wasn't written that way. Correct, but the word is processor. In claim one, in the representative of the 896 patent is processor. Konami had decisions of this court as well as district courts that were finding the word processor was a structural term that was not subject to means plus function. That was our basis for moving forward. And he talks about, High Five talks about Williamson and wants to say that we cited the wrong law. We literally gave them the standard from the first sentence on page 1349 of Williamson. The second sentence, which is what they wanna focus on, says the challenger can rebut that. And it goes on to say sufficiently definite structure. That's not Konami's burden. And we have a foremost expert in gaming technology who said processor, to him, is a structural term. The claim is a gaming machine with a processor. 800,000 of those existed at the time for virtual slot machines, 2004. Do you have in your mind what the testimony of your expert that the other side thinks is so key, some kind of concession that your expert made to the effect, and I'm summarizing it here, perhaps incorrectly, that the claim does not recite structure that would perform the function? Sure, Judge Boulware examined Mr. Akers during our four-day omnibus claim construction hearing. And so he was on the stand, and Judge Boulware phrased a question in the context of would a off-the-shelf processor be able to do what this claim says? I mean, I think, Mr. Akers. Answer, I mean, you have no idea how frustrating this is. You cannot give me a page where I can turn my eyes and look at it and start to talk about the reality of what was said. Hold on, let me see if I can. So long as you don't hold it against me if I find it, Your Honor. And maybe Mr. Ryan has already found it. I can show you what it said, if you'd like. Probably 2510 area. APPX 2671, Akers' deposition. I'm sorry, I'm sorry, 20, please. 2671, Your Honor. 2671, that's a deposition? Okay, yes, and his declaration is at 1371. And there's more that's recited in our briefs. On the topic. Thank you. Thank you, Your Honor. Do you have a page on 2671 of the transcript? Do I have the page? I don't, I have the citation here in my notes. Want to proceed, counsel? Yeah, Your Honor, looking at 2671, I don't see the question as to whether or not processor is a sufficiently structural term. Maybe Mr. Ryan will address it on his. But it wasn't, in addition, it wasn't just the fact that High Five argued to the PTAB that these claims weren't means plus function. In the sister district court case before Judge Dorsey, she found and construed the 896 patent without going to means plus function. If that's not a good sign that Konami's positions are reasonable. Well, was it challenged in that case? The claim construction's issues were challenged. Did the other side, Amwahl 100, understand they were means? How do we know the other case was on all fours, perfectly parallel on the rest? So Konami was asserting exactly the same patents and certainly the same claims. Nobody told us. The briefs don't tell us. They're just this reference to the other case. The other case may or may not be pertinent. Whether it's pertinent depends on a lawyer stacking the other case up and saying, this is exactly the same question, the same kind of testimony, and yada, yada, yada. And that's not, that type of explanation doesn't exist in the briefing that's in front of us. So I'm just supposed to believe you when you come and tell me a general explanation of what happened in a specific setting. Doesn't work that way, sir. Your Honor, I would say in our briefs, we cite the opinion from that other case, and it's in the brief. You cite the opinion, and I'm supposed to go read it, and I'm supposed to go get the briefs in that case, and I'm supposed to do all this work that you're supposed to do for me. Is that really the way you think this system functions? Of course not, Your Honor, and I would say Judge Dorsey did that work for you when she wrote the opinion. And she didn't even raise means plus function. That wasn't raised by the other side in that case. So it wasn't pertinent. Which shows the reasonableness of Konami in believing means plus function didn't apply. You have an Amlaw 100 firm who's not raising that argument. PI-5 is the only defendant that raised this argument. And so if you're trying to adjudicate whether we were reasonable, Konami was reasonable. Failure to raise an argument in another case is grounds for saying that a position taken in this case doesn't have any merit? No, I'm saying that Konami was reasonable in this case. As evidence, you have lots of evidence, but the conduct of Judge Dorsey and the other defendants would demonstrate we were reasonable. We weren't so far gone, and it wasn't so plainly obvious that we were wrong in asserting means plus function. But if I can turn to the abstractness, is again, as the cases evolved, under Aldis, this was not a financial outcome case. The claim recites a gaming machine, and when In re Smith came out, we evaluated whether or not we were gaming rules. And quite frankly, the conclusion that we came up with was we weren't. PI-5 will cite to you the testimony of Mr. Yoshimi, but that's not conclusive on whether we were gaming rules. This court said in In re Smith, if you have a new deck of cards, you can still be patent eligible if you have game rules. And that was what Konami set forth. We define the structure of our reels and the strips such that each game, it was a new deck of cards in essence. And so under the In re Smith exception, we continued with that argument. Again, that was reasonable, and that's what Judge Boulware held to be reasonable. Turning just quickly, in addition to the cases we talked about, Rothschild, they also cite PI-5 relies on ROMAG, and again, it's whether or not we stand out from other cases. In ROMAG, that case clearly stands for attorneys' fees because you had a district court that excluded litigation misconduct. And that was not something that this court did in Judge Boulware's decision. And your honors, as my time is about to expire, if there are any other questions, I'd be happy to address them. Thank you, counsel. Thank you. Mr. Ryan, you have close to four minutes for rebuttal. Yes. So I read into the record some of the citations. There's more of it in our briefs. It was central to this case. It is not the only reason. There was a lot, and we've addressed this in our briefs. There were a lot of reasons that this case was baseless, the contention that the claims had no function. Can you come back to A2671, 1378, 79, and whatnot? And I think those were the, we had this debate earlier, and I think, I mean, it seems to me that you have something on your side, if you can say, well, at the time they brought their lawsuit, their other experts said it was, you shouldn't have brought the lawsuit because there's no merit at all. So it seems to me that you need to take that, show us in that language. Yes. And so I'm all ears. Yes, your honor, thank you. So it's at those pages. It's at lines 93, page 93 in the deposition, at line 11 it starts. What was that, 93 in the depo is what page in the record? Yes, and that's APPX 2671, Acres Deposition. And in his declaration, at page 90, lines two through 91, line 14. And page 92, line 12 through 93, line 11. At APPX 1378 through 79, his declaration. He admits, admitted repeatedly below, and this is uncontested. Konami did not contest this in their brief. Can you read them to us? Yes. First, what the question presented was, and then what the answer is. Is this all about how, if you have a processor, you have to program it to do what you want it to do? Yes. Okay. That's correct, your honor. He testified that, quote, processor, unquote, and, quote, game controller, unquote, claim elephants were insufficient to perform the associated claimed function because detailed software programming is required, which was not in the claim and was not in the specification. The specification, in fact, expressly states in columns five through seven that programming is required, but that programming is not disclosed. I believe I'm out of time, your honor. I'm happy to answer any questions or go further if you'd like. You're not out of time, you have another minute. Okay, thank you. Thank you. Okay. So, couple things. In the IPR, and this is in the briefs, we explain in detail that we told, we said in our IPR response, we are not taking a position under 112 in the IPR. We reserve that for later. We didn't want to present it to the patent office. We wanted to save it if there was gonna be a court fight. There's nothing wrong with that. You wouldn't take a position one way or the other. Correct. That's what we said. You weren't saying it's not a means-plus-function claim. Well, that's right. So, if the institution had been granted, then it would have been presumptively a means-plus-function claim? It could be. No, but it would have been because you're not challenging at all. So, you're saying, go ahead and run this IPR and invest the time and effort of the patent office on the other side. We're agreeing that it's not a means-plus-function claim. No, we're not either agreeing or disagreeing. We're gonna reserve that for later. You're allowing the whole enterprise to go forward, right? Well, we were, at the time, since I was lead counsel, I can tell you, we didn't want to get into 112 and get a partial decision from the patent office. We wanted to reserve that for the court. Proceed. Did the petition in that case assert, as a matter of claim construction, that this was means-plus-function? No, and the reason was, Konami had been contending that its claims were broader. And did the board, in denying institutions, say, we can screw the claim as follows? No, it did not. It didn't get into anything on the 112. It didn't get into 112 at all. Did it get into claim construction? I believe it did some claim construction. Yes, Your Honor. And it, so, but it went ahead and construed it in a construction that was not a 112-6 construction. Yes, and I apologize. Without referring to the fact that it was not, it was just proceeding to say, here we have a processor, all processors have to be, have to be programmed, and whatever the debate was about claim construction. They didn't get into the programming aspect. They just addressed the word processor by itself. As Your Honors may know, the Patent Office is notorious, unfortunately, for not applying in Ray Donaldson, and not properly construing claims under 112. So we didn't want to get into that fight in front of the Patent Office. We wanted to reserve it for the court, and said we would expressly in our petition. Thank you, Counsel. You are now out of time. Thank you very much. The case is submitted.